IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| Aimee M. Green, ) | |
| ) | Case No. 11-44371-DRD-7 |
| Debtor. ) | |
| ) | Adv. No. 11-4360-DRD |
| KATHERINE HAMILTON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| AIMEE GREEN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Katherine Hamilton and Shop Girls, LLC[1] (collectively, the "Plaintiffs") filed a complaint seeking a determination that the debts owed to the Plaintiffs by Aimee M. Green ("Debtor") are not dischargeable pursuant to 11 U.S.C. § 523(a)(4). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons that follow, the Court finds a portion of the debts owed by the Debtor to the Plaintiff Shop Girls excepted from discharge.

## **FACTS**

Plaintiff Hamilton and Debtor formed Shop Girls, LLC ("Shop Girls" or "LLC"), a retail

---

[1] Plaintiff Shop Girls is referred to in a number of ways in the pleadings and the formation documents. The Court will use the form that is in the Articles of Organization ("Shop Girls").

ladies clothing boutique, and executed and filed the Articles of Organization on August 13, 2007. Ex. A. They also executed an Operating Agreement for Shop Girls. Ex. B. The Operating Agreement designated the business as a retail clothing store and set forth the management of the business and the powers of the members and the relevant provisions will be discussed in more detail below. It provided that the members were Aimee Green (Debtor) and Katherine Hamilton (Plaintiff) and also noted that each member had 50% ownership in the limited liability company. Ex. B, ¶ 5.1. The parties testified that they obtained loans and used the personal credit cards of Green to start up and operate the business. Plaintiff Hamilton and employees of the store testified that Hamilton oversaw the creative and sales side of the business and Green did most of the paperwork and financials. Green testified that they both handled purchasing and sales and that Hamilton had access to the bank and credit card accounts on-line and in fact did write checks from time to time.

Green filed a bankruptcy petition under Chapter 7 on September 16, 2011. On December 19, 2011, plaintiffs Hamilton and Shop Girls filed an adversary proceeding against Defendant seeking a determination of non-dischargeability of certain debts owed to them by Defendant under §523(a)(4). Specifically, Plaintiffs allege that Debtor used LLC funds to pay numerous personal charges on her credit cards and also that she did not pay Plaintiff what she was owed in wages and benefits. They asserted that Debtor was a de facto manager of the LLC and therefore owed a fiduciary duty as required under §523(a)(4) and that Debtor's actions also constituted embezzlement. Debtor denied such allegations and asserted that she thought Plaintiff Hamilton knew she was paying personal expenses on her credit cards and that it was necessary for her to do so to keep her credit in good standing so that the LLC could continue to use it to operate. She

also claimed that the parties operated the LLC equally and that Debtor chose not to be involved with the finances of the company.

On April 24, 2012, the Court held a trial on the matter and thereafter the parties filed post-trial briefs.

## Defalcation in a Fiduciary Capacity Under § 523(a)(4)

Section 523(a)(4) provides that "a discharge under 727...of this title does not discharge an individual debtor from any debt...for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." To prevail under the "fraud or defalcation while acting in a fiduciary capacity" theory, a creditor must prove the following elements by a preponderance of the evidence: 1) that a fiduciary relationship existed between the creditor and the debtor; and 2) that the debtor committed fraud or defalcation in the course of that fiduciary relationship. *In re Shahrokhi*, 266 B.R. 702, 707 (8th Cir. B.A.P. 2001). In this case, the Court must determine whether a fiduciary relationship existed between Plaintiffs and Debtor before it ever reaches the fraud question.

The issue of whether a relationship is a fiduciary one is a matter of federal law. *Id.* at 707. Statutory exceptions to discharge under this provision are narrowly construed. *Werner v. Hofmann*, 5 F.3d 1170, 1172 (8th Cir. 1993) ("The statutory exceptions to discharge in bankruptcy are narrowly construed, and the creditor opposing discharge must prove the debt falls within an exception to discharge."); *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986) ("The broad, general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable in the dischargeability context.").

The Eighth Circuit has interpreted the term "fiduciary" in this context to refer only to

trustees of express trusts, not a constructive trust or mere contractual relationship. *Hunter v. Philpott*, 373 F.3d 873, 875 (8th Cir. 2004); *In re Engleman*, 271 B.R. 366, 369 (Bankr. W.D. Mo. 2001) ( "... it takes more than a 'merely contractual relationship' to establish the existence of a fiduciary relationship."). The term is used in a "strict and narrow sense," and therefore does not embrace trustees of constructive trusts imposed by law because of the trustee's malfeasance. *In re Long*, 774 F.2d 875, 878 (8th Cir. 1985). It is the substance of a transaction, rather than the labels assigned by the parties, which determines whether there is a fiduciary relationship for bankruptcy purposes. *Id.* at 878; *see also, e.g., In re Nail*, 446 B.R. 292 (8th Cir. BAP 2011) (the use of the word "trustee" in state statute discussing assignments did not create a fiduciary relationship between mortgagor and lender as required under § 523(a)(4)).

The parties do not dispute that state law may create a fiduciary status that is cognizable in a bankruptcy court. However, as this Court determined in *In re Olson*, 454 B.R. 466 (Bankr. W.D. Mo. 2011), with respect to the duty one member of a limited liability company owes to another, the Court begins its analysis by examining an analogous legal relationship—a business partnership. Under Missouri law, "fiduciary capacity" in § 523(a)(4) does not include within its scope the fiduciary relationship between partners. *Hardesty v. Johnson (In re Johnson)*, 126 B.R. 343, 346 (E.D. Mo. 1991); *In re Geer*, 137 B.R. 37, 40 (Bankr. W.D. Mo. 1991); *see also, In re Bundy*, 95 B.R. 1004, 1013 (Bankr. W.D. Mo. 1989) ("The Uniform Partnership Law adopted in Missouri has previously been held not to create the type of technical or express trust required to establish the fiduciary relationship required for a determination of nondischargeability under § 523(a)(4)."). If a fiduciary duty were found inherent in all partnership or contract relationships, few, if any, debts would be discharged under the exceptions. *Id.*

As noted in *Olson*, the same reasoning holds true for a limited liability company. The operations of a Missouri limited liability company are governed by 1) the operating agreement, and 2) the Missouri Limited Liability Company Act (the "Act"). Mo. Rev. Stat. §§ 347.010-347.187. The Operating Agreement between Plaintiff Hamilton and Debtor in no way establishes a trust relationship to satisfy § 523(a)(4). *See In re Martinez*, 410 B.R. 847 (Bankr. W.D. Mo. 2008) (nothing in the limited liability company's partnership agreement created an express or technical trust that would impose a fiduciary duty on the debtor). Plaintiffs concede that Mo. Rev. Stat. § 347.088.4[2] is inapplicable because there is not a member of Shop Girls in which management is vested. However, they argue that Mo. Rev. Stat. § 347.088.3[3] is applicable and cite *In re Olson* (which cites *In re Tri-River Trading, LLC*, 329 B.R. 252 (8th Cir. BAP 2005)). The Court makes the same observations in this case as it did in *Olson*: a fiduciary relationship is more narrowly defined in a dischargeability context than under general common law and there is not a managing member here to trigger the duty of loyalty. *Olson*, 454 B.R. at 476.

The Operating Agreement denotes that Plaintiff and Debtor were members of the LLC, that the members shall manage the business of the LLC and that each member had equal duties

---

[2] Mo. Rev. Stat. § 347.088.4 provides that "...one who is a member of a limited liability company in which management is vested in one or more managers and who is not a manager shall have no duties to the limited liability company or to the other members solely by reason of acting in his capacity as a member."

[3] Mo. Rev. Stat. § 347.088.3 provides that "...every member or manager, if any, shall account to the limited liability company and hold as trustee for it any profit or benefit derived by such person without the informed consent of more than one-half by number of disinterested managers or members from any transaction connected with the conduct of the business and affairs or the winding up of the limited liability company, or from any personal use by such person of the property of the limited liability company, including confidential or proprietary information of the limited liability company or other matters entrusted to him as a result of his status as manager or member."

and powers. Ex. B. Thus, Debtor is not designated as a managing member. Plaintiff argues that Debtor was a de facto managing member. However, the Court does not find that Debtor's role in the business was a managerial role. Although she testified that she did the books and handled much of the finances it was apparent from the testimony that this was often the case due to Hamilton's lack of desire to perform such tasks. The mail came to the store and Hamilton could have reviewed the bills and she was also aware of the on-line passwords to the credit cards and bank accounts and could have accessed them if desired. There was also testimony that Hamilton did write checks and pay bills when necessary.

The Court finds that no fiduciary relationship as required by §523(a)(4) existed between Plaintiff Hamilton and Debtor[4]. Therefore, the Court need not reach the merits of Plaintiffs' defalcation claim.

## Embezzlement

Plaintiffs also contend that Debtor has embezzled property or funds from the LLC. Initially, the Court must determine the correct party to bring this cause of action. Standing is "the threshold question in every federal case." *Maverick Media Grp., Inc. v. Hillsborough Cnty., Fla.,* 528 F.3d 817, 819 (11th Cir.2008) (internal quotations omitted). The party invoking federal jurisdiction bears the burden of demonstrating his standing to sue. *Mulhall v. UNITE HERE Local 355,* 618 F.3d 1279, 1286 (11th Cir.2010) ( citing *Pittman v. Cole,* 267 F.3d 1269, 1282 (11th Cir.2001)). To demonstrate standing, a party must show: (1) he has suffered, or imminently will suffer, an injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a

---

[4] It is unnecessary for the Court to make a finding as to whether a fiduciary duty existed between Debtor and ShopGirls since it has sustained Shop Girl's claim for embezzlement and the measure of damages would be no different under the defalcation claim.

favorable judgment is likely to redress the injury. *Id.*

Determining whether a plaintiff has suffered a cognizable injury often requires examination of the cause of action he asserts. "Essentially, the standing question ... is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin,* 422 U.S. 490, 500, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975). Section 523(c)(1) states that a debtor will be discharged from a debt of the kind specified in §523 (a)(4), *unless* "on request of the creditor to whom such debt is owed," the bankruptcy court determines the debt is not to be discharged. Thus, only creditors to whom a debt is owed may assert that a debt is nondischargeable in bankruptcy.

Thus, the essential question is whether Plaintiffs are creditors of the debtor. Plaintiffs premise their Section 523(a)(4) claim on allegations that Debtor's misuse of the LLC's monies amounts to fraud, embezzlement, or larceny. Taking these allegations as true, the Court could draw reasonable inferences that Shop Girls was damaged by Debtor's diversion of the LLC's funds thus Shop Girls holds a claim against Debtor. The alleged facts, however, do *not* support a conclusion that plaintiff Hamilton, as a member of Shop Girls, is owed a debt by Debtor.

Shop Girls is a separate legal entity created pursuant to Missouri statutes pursuant to which a limited liability company holds property separate and apart from the property of its members. *See* Mo. Rev. Stat. § 347.010, *et seq*. (1993). As such, only Shop Girls can assert claims for wrongful distributions made to Debtor. Plaintiff Hamilton does not allege facts that support a conclusion that she was injured individually and is not entitled to recover directly any damages that were inflicted on the LLC by Debtor's misuse of LLC property. Thus, plaintiff

Hamilton is not a creditor to whom the debts alleged in the complaint are owed, and does not have standing to pursue the nondischargeability actions pleaded in the complaint. *Coleman v. Miller,* 270 B.R. 303 (D. Kan. 2001). Rather, Shop Girls, LLC is the proper party and has standing to pursue the cause of action under § 523(a)(4).

Under § 523(a)(4), embezzlement is the "fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Murray*, 408 B.R. 268, 275 (Bankr. W.D. Mo. 2009) (citing *Belfry v. Cardozo (In re Belfry)*, 862 F.2d 661, 662 (8th Cir. 1988)). A plaintiff must establish by a preponderance of the evidence that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used. *Id.*

To show embezzlement, the creditor has to prove that it entrusted its property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud. *Bankers Trust Co. v. Hoover (In re Hoover),* 301 B.R. 38, 52 (Bankr. S.D. Iowa 2003). Implicit in a claim of embezzlement is a degree of fraudulent intent. *Chapman v. Fuget (In re Fuget),* 339 B.R. 702, 707 (Bankr. S.D. Iowa 2006). The debtor's fraudulent intent may often be shown by circumstantial evidence. *In re Sedlacek,* 327 B.R. 872, 880-81 (Bankr. E.D. Tenn. 2005). These elements have been met in the present case as to a portion of the funds.

There is no dispute that Debtor used Shop Girls funds to pay monthly balances on her personal credit cards which included personal expenses. Debtor herself admitted at trial that she knowingly did just that. Debtor was entrusted with Shop Girls money as one of its members pursuant to the Operating Agreement which provided that each member had the authority on

behalf of the LLC to acquire property, open bank accounts and execute all instruments necessary to do business. Ex. B, ¶¶ 4.1 & 4.2.  Both parties also testified that in the LLC's ordinary course of business that Debtor was the member that most frequently paid the bills and dealt with the LLC's financial matters.  Further, plaintiff Hamilton testified that she expected the business funds to be used for business expenses only and was not aware that Debtor was using such funds towards personal expenses.  Thus, the evidence demonstrates that Debtor was entrusted with Shop Girls funds and that LLC funds were clearly not expected to be used to pay Debtor's own personal expenses.

The element requiring that the appropriation of the funds for a purpose other than intended be accompanied by fraudulent intent is the main issue at hand.  Debtor's justification for using LLC funds to pay personal expenses was that she had to keep her personal credit in good standing in order for the LLC to be able to use her personal credit cards for purchases since the LLC could not qualify for its own credit card.  This explanation makes little, if any, sense.  The proper way for Debtor to keep her payments current on her cards with regard to amounts incurred for personal reasons would be for her to use her personal funds to do so.  The Court finds that the magnitude of the personal use of the credit cards is such a circumstance that indicates fraudulent intent.  There are numerous instances of personal use on the credit cards including dining, travel and shopping.  Also, Debtor admitted that one of the Chase credit cards was used solely for personal expenses and the LLC paid $12,600 of the charges.  The Court is also troubled by other indicia of fraud.  Two employees of ShopGirls testified that Debtor often took merchandise and cash from the store and did not properly account for it.  Debtor also admitted that she used her personal credit cards to pay for some jewelry material that she

personally sold at a neighboring store and then paid those credit cards with LLC funds. Based on all of the evidence, the Court finds that the magnitude of the circumstances indicate fraudulent intent by Debtor as to the use of the Shop Girl funds.

For the reasons stated above, the Court finds that Debtor embezzled funds as that term is understood under § 523(a)(4), and the amount that was proven by a preponderance of the evidence is deemed to be a non-dischargeable debt in favor of Plaintiff Shop Girls, LLC. The amount of the LLC funds that Debtor embezzled will be discussed in the Damages section below.

## Damages

The complaint alleged that Debtor charged at least $50,000 worth of personal expenditures to the businesses' credit cards and used Shop Girl's funds to purchase those items. Plaintiffs' prayed that the court determine that the debt be excepted from discharge under 523(a)(4). In effect, Plaintiffs seek entry of a money judgment together with a declaration that the amount of that judgment is excepted from Debtor's discharge. Debtor objected in her post-trial brief to Plaintiffs' demand for damages and claimed that the complaint only sought determination that the claims were non-dischargeable and would return to state court for continuance of the trial and presumable determination of a damage amount. The Court previously ruled on this same issue in Debtor's Motion to Strike and determined that it will consider Plaintiffs' complaint amended to include the specific prayer for monetary damages contained in Plaintiffs' Post-Trial Brief due to the fact that such issue was tried by consent of both parties. *See* Bankruptcy Rule 7015(b)(2); *see also*, *In re Maxey*, 410 B.R. 854, 863 fn5 (Bankr. W.D. Mo. 2009). Further, it is impossible to separate the determination of

dischargeability function from the function of fixing the amount of the nondischargeable debt, *see In re Devitt,* 126 B.R. 212, 215 (Bankr. D. Md. 1991), and the Court will do both.

For the debt to be nondischargeable under § 523(a)(4), "the creditor must prove the damages resulting from the embezzlement." John P. Ludington, *Bankruptcy: What constitutes embezzlement of funds giving rise to nondischargeable debt under 11 U.S.C.A. § 523(a)(4),* 99 A.L.R. Fed. 124 § 43 (2007) (citing *In re Salamone,* 78 B.R. 74 (Bankr. E.D. Pa. 1987)). However, the burden-shifting analysis applied by the 8th Circuit is applicable in a case such as this where plaintiff/creditor has established that funds used for personal expenses were those of the LLC's. The burden should then shift to the debtor to show what proportion was not embezzled. *See McMerty v. Herzog*, 710 F.2d 429, 430 (8th Cir. 1983).

Here, Plaintiffs established that significant funds from the Shop Girls account were used by the Debtor to pay personal expenses. At trial, Plaintiffs introduced Exhibit 15[5] which was a damage model plaintiff Hamilton prepared after reviewing all of the credit card and bank account statements. The damage model submitted at trial along with the updated model provided in Plaintiffs' post-trial brief establish a prima facie case for damages in the amount of $49,585.79[6]. The burden then shifts to Debtor to prove what portion of that amount, if any, were legitimate expenses of Shop Girls and not personal.

At trial she went through many of the charges that Hamilton had classified as Debtor's

---

[5]Exhibit 17 was also submitted which was a copy of the same damage model that was easier to read.

[6]The updated damage model established that after applying all payments of Shop Girl's funds first to business expenses there was an excess in total payments made towards Debtor's personal expenses in the amount of $51,083.52. The Court will also deduct the personal expense of Hamilton in the amount of $1,497.73 as it does not appear that that amount was deducted from Debtor's liability. This total amount also takes into account all unknown charges and fees as business expenses.

11

personal expenses and explained that they were either business related, charges made by Hamilton or duplicates. The Court will give Debtor the benefit of the doubt with respect to any instance in which she has given a reasonably unequivocal and specific assertion that the charge was appropriate, even though she does not offer documentation, since Plaintiffs established their prima facie damage amount with little documentation as well. After reviewing all of Debtor's testimony and deducting the amount of charges she plausibly claimed were business related, charges made by Hamilton or duplicates, the damages amount totals $37,202.09. The Court arrived at this amount by subtracting from Debtor's alleged liability $5,740 of the $6,000 cash advance amount as Debtor testified that was a reimbursement for a Department of Revenue business expense. The Court also deducted all credit card charges that Debtor testified were business expenses, charges made by Hamilton or duplicate[7]. Debtor asserted in her testimony that many other charges for restaurants, liquor, hardware stores, gas, etc. were business related but did not offer any specific amounts, dates or explanations and failed to go through each of the statements and identify for the Court those specific charges that were business in nature. The Court cannot, and will not, embark on such a task with no evidence of any kind from which to glean the purpose of the charges. The extent of the commingling of personal charges and business charges on Debtor's personal credit cards is troubling and also makes it questionable whether Debtor can accurately determine in which category the charges should be placed. In fact, Debtor herself testified that she was unable to tell which gas charges were charges made by her or her husband and that she did not know what some charges were for. Thus, if Debtor did not specifically testify as to a charge relating to a business expense she failed to meet her burden

---

[7] Debtor also testified that many of the checks listed on Ex. 15, worksheet 11 were for business expenses but it does not appear that Plaintiff included those amounts in its damages amount.

to show that those charges were not embezzled[8].

Plaintiffs are not entitled to damages for any asserted wage and benefit differentials. Those claims are clearly not claims of the LLC which has been established to be the proper party as to this embezzlement claim and they are not in the nature of embezzlement. If plaintiff Hamilton has such a claim it has not been properly pled as a cause of action in which she has standing. The Court notes that Hamilton does not contend that Debtor was overcompensated for wages and benefits, but rather that she herself should have been paid more and/or did not receive benefits. However, there was evidence that the annual W-2 statements each party received showed they both received the same amount in wages and Debtor testified that Hamilton could have taken advantage of the same benefits but never did so nor requested to receive such benefits. The Court has not included those amounts in the damages total.

## Larceny

The third cause of action under § 523(a)(4) involves larceny. Larceny is the "fraudulent and wrongful taking and carrying away of the property of another with the intent to convert the property to the taker's use without the consent of the owner." 4 Collier on Bankruptcy ¶ 523.10[2], at 523-76 (15th ed. rev.); *In re Belfry*, 862 F.2d at 662. The primary difference between larceny and embezzlement involves the initial taking of the property. For larceny, the original taking must be unlawful. *Id.*

There is no evidence in the record that Debtor fraudulently or wrongfully took Plaintiff's property. Rather, the record demonstrates that Plaintiff voluntarily entrusted Debtor with the

---

[8]Debtor argued in her post-trial brief that 50% of any damages would have been owned by defendant as 50% owner of Shop Girls so Plaintiff would only have a claim for half. However, as discussed above, the proper plaintiff and the party entitled to damages is the LLC, which is a separate legal entity, and it is entitled to all of the embezzlement damages.

funds. Because of this, the original possession of the funds by Debtor was not unlawful and thus did not amount to larceny as that term is used in § 523(a)(4). Accordingly, the third cause of action under § 523(a)(4) fails.

For the above reasons, it is hereby

**ORDERED** that Debtor's debt owed to Shop Girls, L.L.C. in the amount of $37,202.09 is nondischargeable pursuant to 11 U.S.C. § 523(a)(4). It is further

**ORDERED** that all other claims brought in the complaint against Debtor are overruled.


Dated:  July 25, 2012                           /s/ Dennis R. Dow

THE HONORABLE DENNIS R. DOW
UNITED STATES BANKRUPTCY JUDGE


Copies to:

Aunna L. Peoples

Eric C. Carter